FILED
SUPERIOR COURT
OF GUAM

2021 SEP 20 PM 3: 16

CLERK OF COURT
BY: _____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| JOSHUA F. PETER, ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANCIS GILL, ET AL.,<br><br>Defendants. | Superior Court Case No. <u>CV0426-18</u><br><br><br>**DECISION AND ORDER RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE FRAUD DEFENSE** |

The Court here considers Plaintiffs' March 25, 2021 Motion that the Court award summary judgment against Defendants Cyfred, Ltd. and Francis Gill on their defense of fraud. Having reviewed the briefing, the Court DENIES the Motion.

### I. PROCEDURAL BACKGROUND

Plaintiffs' motion concerns the pled defense of fraud. According to their Answer to the Fourth Amended Complaint, Defendants assert that Wong committed fraud upon Defendants when he represented that he had the authority to enter into certain agreements. Answer to Fourth Am. Compl. ¶ 13 (July 28, 2020). Based on their assertion, Defendants contend that all of Plaintiffs' claims should be estopped for fraud. *Id.* ¶ 65.

In a related case, *Wong v. Cyfred, Ltd.*, CV0425-18, the Court examined this same alleged fraud in its May 16, 2019 Decision and Order re Plaintiff's Motion for Partial Summary Judgment and Defendants' Counter-Motion for Partial Summary Judgment. In CV0425-18, Wong sought to collect on a Promissory Note executed by Cyfred in Wong's favor. Cyfred moved for partial summary judgment on fraud grounds, claiming that Wong misrepresented his

ORIGINAL

authority to sign an October 29, 2012 Settlement Agreement on behalf of certain clients. In denying the motion, the Court found that Wong presented sufficient evidence to establish a factual dispute concerning his knowledge about the circumstances surrounding the signing of the October Settlement Agreement and his intent to deceive when he signed it on behalf of his clients.

In this case, Plaintiffs now move for partial summary judgment on Cyfred and Gill's defense that it cannot be liable for Plaintiffs' claims due to the alleged fraud committed by Wong. In support of their Opposition to the Motion, Defendants rely on Gill's Declaration filed during the summary judgment briefing in CV0425-18. *See* CV0425-18 (Decl. Frances Gill (Jan. 18, 2019) (hereinafter referred to as "Decl. Gill"). Defendants further ask the Court for additional time to file affidavits in support of their positions.

## II.   FACTUAL BACKGROUND/UNDISPUTED FACTS

1. On February 8, 2012, the following persons and entities signed a Settlement Agreement for the Gill-Baza Cases ("Initial Settlement Agreement"): Gill; Cyfred; United Pacific Islanders Corporation ("UPIC"); sixty-two persons and/or the estates of such deceased persons ("Homeowners" or "Homeowner Plaintiffs"); and Geraldo and Mariefe Abalos (collectively the "Abaloses"). Compl., Ex. 1 (Apr. 30, 2018).

2. In the Initial Settlement Agreement, UPIC provided certain guarantees on behalf of certain homeowners:

   16.   UPIC May Sign this Agreement for Certain Homeowners. Because the Homeowners have agreed in writing that the majority of them may settle CV1448-02 and CV1511-06, Mr. Gill and Cyfred agree that if two-thirds of the Homeowners have personally signed this Agreement, then UPIC may sign on behalf of those Homeowners who have not been available to sign this Agreement, are deceased or even disagree with this Agreement, but UPIC will use good faith efforts to try to have all of the available Homeowners review,





approve and sign this Agreement by March 6, 2012, and try to have each representative of the each deceased Homeowner's estate obtain an order from the Guam probate court authorizing each to sign this Agreement and any other documents related to it on behalf of such estate. UPIC and each of the Homeowners who personally sign this Agreement, jointly and severally, will indemnify Mr. Gill and Cyfred from any and all claims, including but not limited to all reasonable attorney's fees and costs incurred as a result of any necessity to defend against any claim made by any Homeowner or any Homeowner's estate for any matter covered in this Agreement, if such Homeowner's or deceased Homeowner's estate's claim arises in any way firm his or its contention that UPIC was not authorized to sign this Agreement for him or it. For any and all purposes of this Agreement, due signature of UPIC for any Homeowner or his estate pursuant to the provisions of this paragraph will be deemed the signature of that Homeowner or his estate.

17.      <u>The Parties' Attorneys May Sign Certain Other Documents for Them</u>. Except for this Agreement, any other documents needed to effect the intent of the parties to it and/or any provision of it may be signed for Mr. Gill; Cyfred; Geraldine Mendiola, Bobbie Reyes; Stephanie Mendiola; Ina Gill, individually, and for the Estate of Peter Gill, Deceased, Verna Bozo, individually and for the Estate of Enrique Bozo, Deceased; and Eleanor Perez by their attorney, inching Curtis Van De veld, Esq., and for UPIC and the Homeowners, by their attorney, including attorney Wong. Mr. Gill will indemnify UPIC, the Homeowners and the Abaloses from any and all claims, including but not limited to all reasonable attorney's fees and costs incurred as a result of any necessity to defend against any claim brought against one or more of them by Cyfred; Geraldine Mendiola; Bobbie Reyes; Stephanie Mendiola; Ina Gill, individually, and for the Estate of Peter Gill, Deceased; Verna Baza, individually and for the Estate of Enrique Baba, Deceased; and/or Eleanor Perez which should have been released under due Mutual Release of Claims, if such claim arises in any way from his, her or its contention that his, her or its attorney was not authorized to release such claim. UPIC and the Homeowners who personally sign this Agreement, jointly and severally, will indemnify Mr. Gill, Cyfred and all of the others limed under the heading of "The Defendants" in Exhibit "A" attached, from any and all claims, including but not limited to all reasonable attorney's fees and costs incurred as a result of any necessity to defend against any claim made against one or more of them by any Homeowner or any deceased Homeowner's estate which should have been released under the Mutual Release of Claims, if such Homeowner's or deceased Homeowner's estate's claim arises in any way from his or its contention that such Homeowner's attorney was not authorized to sign this Agreement for him or it.

Compl., Ex. 1.

3.   The Bankruptcy Court did not approve the Initial Settlement Agreement. Decl. Gill ¶ 10.


ORIGINAL

4. On October 29, 2012, Gill and Wong as "Attorney for UPIC, the Homeowners and the Abaloses" signed a revised settlement agreement titled Reconfirmed and Amended Settlement Agreement for the Gill-Baza Cases (referred to as "Revised Settlement Agreement"). Compl., Ex. 2. The Revised Settlement Agreement reconfirmed the Initial Settlement Agreement as remaining in full force and effect.

5. Wong assured Gill that he had the authority on behalf of all clients to sign the Revised Settlement Agreement. Decl. Gill ¶ 17.

6. This caused Gill to believe that Wong secured all of his clients' authority in writing to settle. *Id.* ¶ 19.

7. Gill claims that he would not have signed the Revised Settlement Agreement without Wong's assurances. *Id.* ¶ 20. According to Gill, this is because "Wong required Cyfred to transfer numerous parcels of property to third parties who were not settling parties in order for Mr. Wong to obtain a first mortgage secured by the transferred property to secure payment attorney's fees owed to him by the deceased client." *Id.* ¶ 23.

8. On or about February 22, 2013, Gill and Wong, as the attorney for UPIC, Homeowners and Abaloses, executed Second Amended Escrow Instructions for the Settlement of the Gill-Baza Cases. Compl., Ex. 3.

9. Sometime in the course of CV0073-16, Cyfred learned that Wong did not have written authority from some or most of his clients to enter into the Revised Settlement Agreement. Decl. Gill ¶ 24.

## III.  LAW AND DISCUSSION

### A. Summary Judgment Standard

The Court may grant summary judgment on particular issues within a case if there is no

genuine issue as to any material fact. GRCP 56(c), (d). In determining whether a genuine issue of material fact exists, the admissible evidence provided by the parties must be viewed in a light most favorable to the non-moving party. *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7.

### B. Interpretation of the contracts

Although the Court is analyzing a fraud defense, what the parties understood depends on contractual interpretation principles. The Court must examine the four corners of the contract to determine the parties' intentions. If the "language within the four corners of the contract is unambiguous, then a court does not resort to extrinsic evidence of the contract's meaning, and a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law." *Wasson v. Berg*, 2007 Guam 16 ¶ 16 (quoting *Guam United Warehouse Corp. v. DeWitt Transp. Servs.*, 2003 Guam 20 ¶ 24). Here, since the Revised Settlement Agreement reconfirmed the Initial Settlement Agreement as remaining in full force and effect, the Court examines both Agreements.

In the Initial Settlement Agreement, the parties recognized that not all Homeowners may have been available to sign the document: "Mr. Gill and Cyfred agree that if two-thirds of the Homeowners have personally signed this Agreement, then UPIC may sign on behalf of those Homeowners who have not been available to sign this Agreement, are deceased or even disagree with this Agreement, but UPIC will use good faith efforts to try to have all of the available Homeowners review, approve and sign this Agreement." Compl., Ex. 1, ¶ 16. In exchange for UPIC taking on this responsibility, UPIC agreed to indemnify Cyfred and Gill. Compl., Ex. 1, ¶ 16.

The parties then agreed that Wong could sign other documents on behalf of the Homeowners: "Except for this Agreement, any other documents needed to effect the intent of

ORIGINAL

the parties to it and/or any provision of it may be signed for . . . UPIC and the Homeowners, by their attorney, including attorney Wong." Compl., Ex. 1, ¶ 17. Again, the parties agreed to indemnify Cyfred and Gill in the event there was no such authority. Compl., Ex. 1, ¶ 17.

Upon reviewing these provisions from the Initial Settlement Agreement, the Court finds it undisputed that Cyfred and Gill had knowledge that not every single Homeowner may have agreed to the Initial Settlement Agreement (though most had). In addition, Cyfred and Gill (along with other parties) understood that further agreements may have been necessary to effectuate the settlement and agreed that Wong could sign any further agreement for the Homeowners. Lastly, the parties agreed Cyfred and Gill would be indemnified if Wong did so absent authorization.

### C. Fraud

Turning to the issue of fraud, there are five elements: (1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages. *Trans Pac. Exp. Co. v. Oka Towers Corp.*, 2000 Guam 3 ¶ 23.

Plaintiffs argue that, based on the evidence before the Court, Defendants cannot prove the elements of misrepresentation, justifiable reliance, and/or damages. As to the element of misrepresentation, Plaintiffs further argue that the misrepresentation must be as to a material fact; Defendants do not oppose that concept. *Wilhelm v. Pray*, 186 Cal. App. 3d 1324, 1331 (Cal. App. 1986); Opp. (May 17, 2021). Finally, Plaintiffs contend that the elements for a fraud claim are the same when a party asserts fraud as a defense; again, Defendants do not oppose that concept. *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 347 (Tex. App. 2019); *Wilson v. Byrd*, 288 P.2d 1079, 1083 (Ariz. 1955); Opp.

ORIGINAL

Moving to the merits of Plaintiffs' motion, the issue before the Court is whether, after examining the record in a light most favorable to Defendants, there are any genuine issues of material fact concerning the elements of misrepresentation, justifiable reliance, and/or damages of Wong's alleged fraud.

The Court first turns to the element of misrepresentation of a material fact. According to Gill, Wong misrepresented numerous times that "he had authority to sign it from ALL his clients." Decl. Gill ¶ 17. Gill contends that he believed Wong's statements to mean that he secured all of his clients' authority in writing and that he would not have signed the Revised Settlement Agreement had he known that Wong did not secure all signatures. *Id.* ¶¶ 19-20 Wong counters that he had the indirect authority to represent all Homeowners, per the language of the Initial Settlement Agreement. In other words, Wong contends that it does not matter whether he had actual, direct consent from all Homeowners because the Initial Settlement Agreement gave him indirect consent.

The Court does not find that the Initial Settlement Agreement granted Wong the authority he claims. The Initial Settlement Agreement granted UPIC the indirect authority to sign the Initial Settlement Agreement on behalf of the Homeowners who were not available to sign, are deceased or even disagree with this Agreement. Compl., Ex. 1 ¶ 16. Wong, on the other hand, was granted authority to sign any other document for UPIC or the Homeowners; the provision granting Wong this authority, however, did not include language authorizing him to sign for Homeowners that are not available, deceased, or do not consent. *Id.* ¶ 17. Accordingly, the Court finds that an issue of material fact exists as to whether Wong had the authority to sign the Revised Settlement Agreement on behalf of Homeowners absent universal consent.

ORIGINAL

Moving on to the "justifiable reliance" prong, there must be reliance and the reliance must be justifiable. *Wilhelm*, 231 Cal. Rptr. at 359. For reliance to be justifiable, the circumstances must have been reasonable for the party to accept the other party's statements without an independent inquiry or investigation. Wong points to *South Tahoe Gas Co. v. Hofmann Land Improv. Co.*, 25 Cal. App. 3d 750 (1972), for the principle that the party asserting fraud must prove that it relied on the alleged misrepresentation to consent to the contract. In other words, the alleged misrepresentation must have induced Defendants to agree to the Revised Settlement Agreement. Wong asserts that the alleged misrepresentation--that he did not have indirect authority to sign for the Homeowners--did not induce Defendants into signing the Revised Settlement Agreement because they would have signed whether or not Wong had indirect authority.

According to Gill, however, he relied upon Wong's statements that he had authority on behalf of all his clients. Furthermore, Gill stated that he would not have signed the Revised Settlement Agreement if he knew that Wong did not have universal consent because "Wong required Cyfred to transfer numerous parcels of property to third parties who were not settling parties in order for Mr. Wong to obtain a first mortgage secured by the transferred property to secure payment attorney's fees owed to him by the deceased client." *Id.* ¶ 23. Accordingly, the Court is satisfied that an issue of material fact exists as to whether the alleged misrepresentation induced Defendants' reliance. The Court also notes that, because Wong's statements concerned representations between himself and his clients--which, due to attorney-client privilege, Gill could not have independently verified--Gill justifiably relied on those statements.

Finally, the Court turns to the element of damages. To satisfy this element, Defendants must demonstrate that they suffered damages or harm as a result of the alleged fraud. Wong


ORIGINAL

argues that the record establishes that Defendants cannot prove damages; however he does not point to any portion of the record to substantiate his claim. Defendants claim various types of damages, including the avoidance of the obligation in the Promissory Note executed in Wong's favor, which is the central issue in CV0425-18. They also generally seek compensatory and punitive damages. The avoidance of the obligation, alone, constitutes sufficient evidence of damages resulting from the alleged fraud. Accordingly, the Court finds that summary judgment is not appropriate on this element.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiffs Motion for Summary Judgment on Defendants' fraud defense. Since the Court is resolving the Motion in Defendants' favor, the Court also DENIES Defendant's request for additional time to file affidavits in support of their positions.

SO ORDERED this 30th day of September 2021.

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
Wong, Nuit S.
S. mendiola
Date:_____ Time:_____ 9/30/21
Joseph Bamba, Jr.
Deputy Clerk, Superior Court of Guam

Appearing Attorneys:
Wayson W.S. Wong, Esq., Law Offices of Wayson Wong, APC, for Plaintiffs Joshua F. Peter, et al.
Curtis C. Van de veld, Esq., The Van de veld Law Offices, P.C., for Defendants Francis Gill, et al.
Stephanie Mendiola, Esq., self-represented

ORIGINAL